[Cite as *State v. Eades*, 2020-Ohio-5537.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28511 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-3727 |
| | : | |
| RAY L. EADES | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 4th day of December, 2020.

. . . . . . . . . .

MATHIAS H. HECK, JR. by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

BEN M. SWIFT, Atty. Reg. No. 0065745, P.O. Box 49637, Dayton, Ohio 45449
    Attorneys for Defendant-Appellee

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Ray L. Eades appeals from his conviction following a no-contest plea to two counts of attempted aggravated murder of victims under age 13 and child endangering.[1]

{¶ 2} Eades advances four assignments of error. First, he alleges ineffective assistance of counsel based on his attorney's failure to pursue a plea of not guilty by reason of insanity and failure to purse the withdrawal of his no-contest plea. Second, he contends the trial court erred in accepting the no-contest plea, which he claims was not entered knowingly or voluntarily. Third, he argues that the statutory "seriousness" and "recidivism" factors did not support his sentence. Fourth, he asserts that the record did not support the trial court's imposition of partially consecutive sentences.

{¶ 3} The charges against Eades stemmed from his attempt to kill his two children, who were ages six and eight at the time, by burning down his family's home while the children were asleep inside. According to a presentence investigation report, Eades was under the influence of alcohol at the time and recently had been informed by his wife that she wanted a divorce. In the course of entering a no-contest plea, Eades admitted the facts contained in a bill of particulars. Those facts included, among other things, Eades giving sleep medication to his children, barricading the home's doors and windows, locking interior doors, disabling the home's smoke detectors, pouring alcohol around the house, blocking a fire hydrant with his parked car, and lighting a grill inside the house while his children were sleeping. Fortunately, police quickly responded to the scene, discovered the fire, and saved the two children, who were treated for inhalation of smoke

---

[1] Eades also pled no contest to other charges that merged into the attempted aggravated murder charges at sentencing as allied offenses of similar import.

and fumes. Although the children suffered no lasting physical harm, they continue to deal with anxiety and ongoing emotional issues.

{¶ 4} The record reflects that Eades has a history of mental-health problems that began in childhood. Following his indictment, he initially entered a plea of not guilty by reason of insanity. The trial court ordered a mental evaluation regarding Eades' competence to stand trial and his sanity at the time of the offenses. Following the evaluation, an expert opined that Eades was competent to stand trial, that he was not suffering from an acute and severe mental disease or defect at the time of the offenses, and that he knew the wrongfulness of the acts charged.

{¶ 5} Eades later withdrew his insanity plea and entered a no-contest plea to all charges against him. The trial court accepted the no-contest plea at the conclusion of a June 6, 2019 hearing. Thereafter, the trial court allowed Eades to undergo another psychological evaluation and to submit a report for mitigation purposes. The matter proceeded to a July 17, 2019 sentencing hearing. Based on the information presented, defense counsel sought to have sentencing delayed so Eades could pursue civil commitment through probate court. The trial court expressed some skepticism that civil commitment was a viable option in that context but agreed to continue sentencing to allow the parties to address the issue. Two days later, Eades briefed the issue in a written motion to hold sentencing in abeyance. The trial court overruled the motion, finding nothing in Ohio law authorizing civil commitment for a defendant who has withdrawn an insanity plea, been found competent to stand trial, and entered a no-contest plea. The trial court then completed the sentencing hearing on August 21, 2019. At that time, defense counsel advised the trial court that counsel had discussed a plea-withdrawal

motion with Eades. The trial court took two recesses to allow Eades to think about it and to consult with his attorney. After both recesses, Eades assured the trial court that he did not want to withdraw his no-contest plea, and the trial court proceeded to impose sentence. After merging several counts as allied offenses, the trial court imposed consecutive eight-year prison sentences for the two counts of attempted aggravated murder. The trial court imposed a concurrent 180-day term of incarceration for each of the two counts of child endangering. The result was an aggregate 16-year prison sentence. The trial court journalized the sentence in an August 29, 2019 judgment entry. This appeal followed.

{¶ 6} In his first assignment of error, Eades alleges ineffective assistance of counsel based on his attorney's failure to pursue a plea of not guilty by reason of insanity. He argues that the facts and circumstances of the case establish that an insanity plea would have had a reasonable probability of success. In support, Eades cites evidence establishing his diagnosis of mental illnesses beginning at age four and continuing through his childhood. Eades acknowledges that his mental condition stabilized as an adult and that he successfully served several years in the Marine Corps. He asserts, however, that his wife's leaving him and asking for a divorce triggered his dormant mental illness, resulting in him committing the acts at issue. Under these circumstances, Eades contends his attorney provided ineffective assistance by failing to pursue an insanity defense.

{¶ 7} Eades also alleges ineffective assistance of counsel based on his attorney's failing to "pursue [his] wishes to withdraw his no contest plea." Although no plea-withdrawal motion was filed, Eades appears to suggest that the trial court improperly

dissuaded him from filing such a motion. Based on the evidence of his mental-health history and his hesitation during the second sentencing hearing regarding whether to stand on his no-contest plea, Eades maintains that his attorney should have moved to withdraw the plea so he could pursue an insanity defense.

{¶ 8} To establish ineffective assistance of counsel, a defendant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial or proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

{¶ 9} We are unpersuaded that Eades' counsel provided deficient representation by failing to further pursue a plea of not guilty by reason of insanity. As set forth above, counsel *did* assist Eades in entering such a plea. Only after Eades was evaluated by a psychological expert and found not to have been legally insane at the time of his offenses did Eades change his plea to no contest. Although Eades has a history of mental issues, it does not follow that he met the definition of legal insanity when he committed the acts at issue. In light of the expert's opinion that Eades was not insane when he committed his offenses, failing to continue to pursue a plea of not guilty by reason of insanity did not fall below an objective standard of reasonableness. *State v. Coleman*, 2d Dist. Montgomery No. 24955, 2014-Ohio-856, ¶ 35, citing *State v. Purcell*, 107 Ohio App.3d 501, 506, 669 N.E.2d 60, 64 (1st Dist.1995).

{¶ 10} We note too that Eades was evaluated and found competent to stand trial. The plea and sentencing transcripts contains nothing to undermine the correctness of

that expert opinion. During the plea hearing, Eades rationally explained to the trial court why he wanted to withdraw his insanity plea and enter a no-contest plea. "This court has recognized that the withdrawal of an insanity plea does not constitute ineffective assistance where a defendant makes his own informed choice to do so." *Id.*, citing *State v. Sinks*, 2d Dist. Montgomery No. 11428, 1990 WL 80582, *5 (June 13, 1990). Accordingly, we see no ineffective assistance of counsel due to the failure to continue to pursue a plea of not guilty by reason of insanity.

{¶ 11} We reach the same conclusion with respect to defense counsel's failure to pursue Eades' purported "wishes to withdraw his no contest plea." As an initial matter, Eades never indicated on the record that he wanted to withdraw his no-contest plea. Recognizing the seriousness of his situation, he did express uncertainty and hesitation about what he should do. In response, the trial court did not attempt to dissuade him from withdrawing his plea. The trial court simply explained the implications of such a decision and twice recessed the proceedings so Eades could consult with counsel and think about what he wanted to do. After both recesses, Eades affirmed that he wanted to stand by his no-contest plea. We see no basis for an ineffective assistance of counsel claim predicated on counsel abiding by Eades' wishes and failing to seek withdrawal of the plea. The first assignment of error is overruled.

{¶ 12} In his second assignment of error, Eades contends the trial court erred in accepting a no-contest plea that was not knowingly and voluntarily entered. He claims the plea-hearing transcript reflects his reluctance to enter a plea, his uncertainty as to what he was doing, his "possible" distrust of his attorney, and his requests for assistance from the trial court. Under these circumstances, Eades asserts that the record reflects a plea

that was not knowingly and voluntarily entered and, therefore, that should not have been accepted.

{¶ 13} "Due process mandates that a * * * plea be knowing, intelligent, and voluntary," and "[c]ompliance with Crim.R. 11(C) ensures that a plea meets this constitutional mandate." (Citations omitted.) *State v. Thompson*, 2d Dist. Montgomery No. 28308, 2020-Ohio-211, ¶ 5. Here Eades makes no argument that the trial court failed to demonstrate strict compliance with the constitutional advisements in Crim.R. 11(C)(2)(c). Nor does he argue that the trial court failed to demonstrate substantial compliance with the non-constitutional advisements in Crim.R. 11(C)(2)(a) and (b).

{¶ 14} But even when a trial court engages in a thorough Crim.R. 11 plea colloquy, a reviewing court is permitted to consider the record to satisfy itself that, under the totality of the circumstances, a defendant entered a knowing, intelligent, and voluntary plea. *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 43-44. Here Eades argues that notwithstanding a full Crim.R. 11 plea colloquy, he exhibited reluctance and an inability to understand what was happening. Eades contends he was uncertain what he was doing, questioned whether he could rely on his attorney, and requested assistance from the trial court. He argues that these circumstances demonstrate the lack of a knowing and voluntary plea.

{¶ 15} We find Eades' argument to be unpersuasive. The record reflects that the trial court patiently explained everything to Eades, who had completed some college and who was employed at Wright-Patterson Air Force Base at the time of his offenses. The plea-hearing transcript makes clear that Eades' hesitation, questioning, and requests for assistance were motivated by the gravity of the situation and his own recognition that he

faced a "huge decision," not by a lack of understanding of what was happening or what he was doing. (*See, e.g.*, Plea Hearing Tr. at 15.) He rationally explained to the trial court that he had decided to plead no contest because he believed it was "the best way possible" to proceed. (*Id.* at 45.) When Eades wanted to pause to discuss something with counsel, the trial court stopped the proceeding and gave him ample time to do so. (*Id.* at 32.) Eades admitted that he had received all the time he needed to consult his attorney. (*Id.* at 43.) When Eades inquired about his counsel's performance and advice, the trial court generally spoke in favorable terms about counsel's reputation. But at one point the trial court made clear that it could not "give an endorsement" of Eades' attorney or give a "second opinion" about defense counsel. (*Id.* at 14.) Ultimately, Eades informed the trial court that he was satisfied with the representation provided by his attorney. (*Id.* at 41.) Based on our review of the plea-hearing transcript, we see no support for Eades' assertion that he did not know what was happening or what he was doing when he entered his no-contest plea. To the contrary, the record persuades us that Eades fully understood what was occurring and that he entered a knowing, intelligent, and voluntary plea. The second assignment of error is overruled.

{¶ 16} In his third assignment of error, Eades contends the "seriousness" and "recidivism" factors in R.C. 2929.12 did not support the sentence the trial court imposed. After listing the statutory factors, Eades argues:

> Here, the trial court may not have fully considered all relevant factors under these circumstances. All the factors indicating that Eades is not likely to commit future crimes are present in this case. And although the offenses were serious and could have caused harm to his children, there was no

intent or malice demonstrated as Eades does not remember causing the incident. It was very likely that Eades suffered a mental break triggered by the event of divorce which raises many concerns as to whether a prison sentence should have been ordered in this case verses inpatient treatment. The overriding concern of recidivism, if any, stems from Eades' mental illness that had not been properly diagnosed or treated.

Therefore, the trial court failed to properly consider the seriousness and recidivism factors in this case when it sentenced Eades to sixteen (16) years in prison.

(Appellant's Brief at 19-20.)

{¶ 17} Under R.C. 2953.08(G)(2), we may vacate or modify a sentence only if we determine by clear and convincing evidence that the record does not support the sentence or that it is otherwise contrary to law. Here Eades does not dispute the lawfulness of the individual sentences he received. They were within the authorized statutory range, and the trial court indicated that it had considered the statutory principles and purposes of sentencing and the statutory seriousness and recidivism factors. (August 21, 2019 Sentencing Tr. at 21-22.) The trial court was not required to explain its reasoning or make specific findings regarding the applicability of those factors. *State v. Tabor*, 2d Dist. Montgomery No. 28298, 2020-Ohio-2855, ¶ 8. Therefore, Eades' individual sentences were authorized by law. *State v. Folk*, 2d Dist. Montgomery No. 27375, 2017-Ohio-8105, ¶ 6-7. That being so, we may vacate or modify the individual sentences only if we find by clear and convincing evidence that the record did not support

them.[2] We make no such finding here.

{¶ 18} With regard to the statutory seriousness and recidivism factors, Eades contends all of the R.C. 2929.12(E) factors indicate that he is unlikely to commit future crimes. Those factors include the lack of juvenile delinquency adjudications, the lack of prior criminal offenses, leading a law-abiding life for a number of years, committing the current offense under circumstances not likely to recur, and showing genuine remorse. Eades asserts that any concern about recidivism stems from "mental illness that had not been properly diagnosed or treated." (Appellant's Brief at 19.) He also claims the record lacks evidence that he acted with malice or the intent to harm his children.

{¶ 19} Upon review, we agree that most of the R.C. 2929.12(E) factors appear to be favorable to Eades. He has no prior juvenile or adult record and seems to have led a law-abiding life prior to the current offenses. Based on our review of the record, he also seemed to express genuine remorse. As for the offenses being unlikely to recur, however, the record does not compel a conclusion that Eades would not attempt to harm his children again. Although he had a history of mental-health issues, the record also reflects that he was under the influence of alcohol when he engaged in the conduct that nearly led to the death of his children. Notably, in his own statement to the trial court, Eades suggested that he was "not capable of saying that this will never happen again." (July 17, 2019 Sentencing Tr. at 80.) In addition, Eades' claim that he did not intend to harm his children is belied by his actions leading up to the fire. Although the trial court was cognizant of and sympathetic to Eades' mental-health issues, it nevertheless expressed

---

[22] We will address the trial court's imposition of partially consecutive sentences under Eades' fourth assignment of error.

a need to protect his children from future crime. (*Id.* at 94.) The record does not clearly and convincingly fail to support this conclusion. We note too that under R.C. 2929.12(B) at least one factor applied indicating that Eades' actions were more serious than conduct normally constituting the offense, namely the fact that his relationship with his children facilitated the offense. In short, we are unpersuaded that the record clearly and convincingly fails to support the imposition of eight-year prison sentences for Eades' act of attempting to kill his two children. In reaching this conclusion, we note that the statutory maximum penalty for attempted aggravated murder was 11 years in prison on each count. The third assignment of error is overruled.

{¶ 20} In his fourth assignment of error, Eades challenges the trial court's imposition of partially consecutive sentences. In particular, he contends the record fails to support consecutive sentences on the two counts of attempted aggravated murder. Eades recognizes that the trial court made the consecutive-sentence findings required by R.C. 2929.14(C)(4). He argues, however, that the record clearly and convincingly fails to support some of those findings.

{¶ 21} When addressing the eight-year prison sentences for attempted aggravated murder, the trial court made the following findings:

> I had indicated that these sentences were going to be consecutive and there are findings that I must place on the record pursuant to [R.C.] 2929.14(C)(4).
>
> Number 1, I find that consecutive sentence [sic] is necessary to protect the public from future crime or to punish Mr. Eades; number 2, the consecutive sentences are not disproportionate to the seriousness of your

conduct and to the danger the defendant poses to the public; and at least two of the multiple offenses were committed as part of one or more courses of conduct and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any other courses of conduct adequately reflects the seriousness of the offender's conduct.

Specifically addressing that, there were two attempted murder cases. There were two separate victims.

So I do, in fact, find that the offenses were great and unusual and no single prison term for any of the offenses adequately reflects the seriousness of your conduct.

(August 21, 2019 Sentencing Tr. at 25-26.)

{¶ 22} With regard to the foregoing findings, Eades' only arguments are (1) that he committed a "single act" and did not engage in a course of conduct and (2) that "there is no evidence in the record that demonstrates that Eades is a danger to the public and likely to reoffend." For these two reasons, he argues that the record clearly and convincingly fails to support the imposition of consecutive sentences on the counts of attempted aggravated murder.

{¶ 23} Contrary to Eades' first argument, the record does support the trial court's finding that the two attempted aggravated murder offenses "were committed as part of one or more courses of conduct." The course of conduct involved a multi-step plan to kill his children. It included acquiring fire-starter logs, pouring alcohol around the house, placing home-made "wicks" around the house, purchasing medication and giving it to his

children to induce sleep, moving a barbeque grill into the bedroom, barricading doors and windows, locking interior doors, dismantling smoke alarms, blocking the fire hydrant near his home, and, finally, lighting an indoor fire intended to kill his children. Finally, we reject Eades' second argument that there is no evidence of him being a danger to the public and likely to reoffend. As set forth above, Eades himself indicated that he was incapable of saying he would not reoffend. Based on the information before us, the record does not contain evidence that clearly and convincingly fails to support the trial court's finding about a need to protect the public from future crime. The fourth assignment of error is overruled.

{¶ 24} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
Ben M. Swift
Hon. Richard Skelton